# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# DANVILLE DIVISION

| | |
|---|---|
| **ASHRAF AL BABSEH**,[1] | ) |
| | ) Civil Action No. 4:23cv00004 |
| **and** | ) |
| | ) **REPORT AND** |
| **RICKYS CHIPS, LLC**, | ) **RECOMMENDATION** |
| Plaintiffs, | ) |
| | ) By: Pamela Meade Sargent |
| v. | ) United States Magistrate Judge |
| | ) |
| **UTZ QUALITY FOODS, LLC**, | ) |
| Defendant. | ) |

This matter is before the court on a Motion To Enforce Settlement Agreement filed by the Defendant, Utz Quality Foods, LLC, ("Utz"), (Docket Item No. 50) ("Motion"). Thereafter, the Plaintiffs, Ashraf Al Ababseh, ("Al Ababseh"), and Rickys Chips, LLC, ("Rickys")[2] responded to the Motion, (Docket Item No. 54), and Utz replied, (Docket Item No. 55). Plaintiffs have requested a hearing on the Motion. The Motion is before the undersigned magistrate judge by referral, pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

---

[1] The individual plaintiff has informed the court that the correct spelling of his last name is Al Ababseh. It is incorrectly spelled as Al Babseh in the caption of the case.

[2] The Plaintiffs will be referred to as follows: collectively as "Plaintiffs," the individual Plaintiff as "Al Ababseh" and the corporate Plaintiff as "Rickys." These terms may be used interchangeably, at times.

## I.     Factual and Procedural Background

On November 30, 2022, Plaintiffs filed a Complaint against Utz in state court, which was removed to this court on February 8, 2023. (Docket Item No. 1.) The Complaint asserted that Plaintiffs entered into an agreement with Utz to operate a distribution center for Utz in exchange for 30 percent of the total net sales generated on a weekly basis from the products sold to the locations where Plaintiffs delivered Utz's products. However, Plaintiffs allege Utz has failed to pay the 30 percent on a weekly basis. Additionally, Plaintiffs allege Utz often failed to complete product orders to fulfill customers' weekly requests. Utz filed its Answer on February 14, 2023, denying the allegations in the Complaint. (Docket Item No. 12.) While there are many disputed facts among the parties, which will be discussed herein, a joint Stipulation Of Undisputed Facts has been filed with the court. (Docket Item No. 57) ("Stipulation").

In this Stipulation, the parties agree that, on March 23, 2023, a remote settlement conference was held before United States Magistrate Judge Joel C. Hoppe. Participating in this settlement conference were Al Ababseh, the individual Plaintiff, appearing on behalf of Rickys; Plaintiffs' then-counsel, Panagiotis Kostopanagiotis, ("Kostopanagiotis"); and Utz's counsel, Richard J. Reibstein, ("Reibstein"), and Glenn W. Pulley, ("Pulley"). Kostopanagiotis and Al Ababseh were in the same physical room and connected via the same remote connection. Steve Liantonio, Senior Vice President of Utz, and Brad Strasbaugh, Director of Distribution Sales Operations, also participated on behalf of Utz. Before the end of this remote settlement conference on March 23, 2023, Kostopanagiotis requested if Al Ababseh he could have until 5:00 p.m. the next day to make a decision on the last offer made by Utz in the mediation. Utz agreed to this request. Following the end

of the remote settlement conference on March 23, 2023, at 5:48 p.m., Reibstein sent an email to Judge Hoppe and Kostopanagiotis, attaching a draft document entitled "Material Terms of Settlement." (Docket Item No. 57-1.) In this email, Reibstein stated he had added some provisions to ensure Plaintiffs' compensation during the transition period was addressed and to address what would occur if the distribution routes were sold or operated by other third parties in the 90-day period. Reibstein further stated, "We look forward to Ricky's concurrence on the attached."

This Material Terms of Settlement, in part, stated that counsel for Utz would prepare a first draft of the settlement agreement, ("Agreement"), which would reflect these material terms. The document would be submitted to Plaintiffs' counsel, finalized and executed as soon as practical. Additionally, the Material Terms of Settlement stated, "Upon execution of the Agreement, Ricky will release and transfer to Utz any and all right, title, and interest he may have in the Territory consisting of three routes … to Utz." The Material Terms of Settlement also contemplated a 90-day smooth transition period, to begin upon the execution of the Agreement. A "smooth transition" was defined as Plaintiffs providing services at or above the standards and at or above the level of service they had provided during the preceding 90 days and not materially less. The Material Terms of Settlement also included a paragraph addressing payment to Plaintiffs in the amount of $196,000, offset by a loan amount to Plaintiffs of $53,867.32, resulting in a final amount of $142,132.68 to be paid to Plaintiffs, in three equal installments. Paragraph 4 addressed when payments were to be made to Plaintiffs. It also states that "[i]f there is any dispute over whether Ricky has provided a smooth transition, Judge Hoppe would decide the matter for the parties under FRCP 73. …" Paragraph 13 of the Material Terms of Settlement addressed inventory remaining at the end of the

transition period, allowing Plaintiffs to sell it to Utz, offset by any amounts Plaintiffs may owe Utz for product purchased.

On March 24, 2023, at 3:56 p.m., Kostopanagiotis sent an email to Utz's counsel with a copy to Judge Hoppe, stating, "… Ricky is in [a]greement to essentially every aspect of these terms. The only caveat he is requesting is that the money be paid into escrow, whether it be to my firm or a neutral site. …" (Docket Item No. 57-2.) Following a discussion among Kostopanagiotis, Reibstein and Pulley, it was proposed that escrow could be avoided by adding a provision to the Material Terms of Settlement, requiring Judge Hoppe to address and rule on any dispute over any payments. At 5:18 p.m. on March 24, 2023, Reibstein emailed Kostopanagiotis a revised version of the Material Terms of Settlement, ("Revised Material Terms of Settlement"), effecting this provision by adding the language "or any dispute over any payments" to paragraph 4. (Docket Item No. 57-3.) This was the only change to the Material Terms of Settlement document that previously had been sent by Reibstein to Judge Hoppe and Kostopanagiotis at 5:48 p.m. on March 23, 2023. At 6:12 p.m. on March 24, 2023, Kostopanagiotis emailed Judge Hoppe, copying Utz's counsel, and stating as follows: "Counsel and I have agreed to terms. Instead of my firm holding the money in escrow, we included language into the agreement that any Disputes over the smooth transition 'or payment' be taken up before you." (Docket Item No. 57-4.) At 6:35 p.m. on March 24, 2023, Kostopanagiotis emailed Utz's counsel, stating in relevant part, "Just as a heads up, Ricky agrees to the new language." (Docket Item No. 57-5.) He further advised that Al Ababseh would "be by to sign Monday morning."[3] At 6:36 p.m. on March 24, 2023, Judge Hoppe emailed counsel, stating, "Thanks for the update. I'm happy

---

[3] The calendar shows that March 24, 2023, was a Friday. Therefore, "Monday" would have been March 27, 2023.

to serve in the role of resolving such disputes if necessary." (Docket Item No. 57-6.) Judge Hoppe further stated, "Please let me know when the settlement agreement has been signed, and I will let Judge Cullen know that the case has settled."

On Saturday, March 25, 2023, Reibstein sent the signature page to the Revised Material Terms of Settlement, signed by Liantonio on behalf of Utz, to Kostopanagiotis. (Docket Item No. 57-7.) In an accompanying email, Reibstein stated he and his co-counsel would "prepare a draft of a detailed agreement consistent with these terms." On Monday, March 27, 2023, at 8:46 a.m., a minute entry was entered on the court's docket, stating, "Settlement reached." (Docket Item No. 28.) Shortly thereafter, the following was entered on the court's docket by the court: "Notice of Cancellation of Status Conference on 9/19/23 and Jury Trial on 12/7/23." (Docket Item No. 29.) At 11:26 a.m.[4] on March 27, 2023, Kostopanagiotis emailed Reibstein that "Ricky will be here later today to sign, and I will forward you a fully executed version before the end of the day." (Docket Item No. 57-8.) At 4:40 p.m. on March 27, 2023, Kostopanagiotis emailed Reibstein, stating, "Ricky's other request I think involves an inventory question that I don't think was fully brought up at the mediation, and might affect the terms of the Settlement." (Docket Item No. 57-9.)

In a telephone discussion on March 28, 2023, Kostopanagiotis informed Utz's counsel that Al Ababseh would not sign the Revised Material Terms of Settlement. In a later telephone discussion that same day, Kostopanagiotis advised Utz's counsel that he and his law firm would be filing a motion to withdraw as counsel for Plaintiffs. Reibstein sent an email to Kostopanagiotis at 4:44 p.m. on March 28,

---

[4] While the Stipulation states this email was sent at 11:26 a.m., the email itself indicates a time of 11:25 a.m.

2023, confirming their telephone conversations, noting that it was Utz's position that "Settlement [was] reached." (Docket Item No. 57-10.) Utz's counsel added, "We do not need a written agreement to be signed. …"

On April 10, 2023, Al Ababseh filed a "Statement" with the court. (Docket Item No. 31.) In this Statement, speaking of Utz's verbal offer at the conclusion of the mediation, which was reduced to handwriting, Al Ababseh wrote, "The judge told me I had 24 hours to either accept [Utz's] offer or decline. … So I took a day to think about it and I called my attorney the next day and I told him that I agree to the term that was presented to me in mediation." Thereafter, a conference was held with Judge Hoppe on April 12, 2023, to address issues raised in this Statement. At that time, an additional conference with Al Ababseh and Kostopanagiotis was scheduled with Judge Hoppe for April 20, 2023. Thereafter, on April 28, 2023, Judge Hoppe conferred with Utz's counsel. On May 4, 2023, Judge Hoppe had yet another conference with Al Ababseh and Kostopanagiotis, and later that day, Judge Hoppe sent an email to all counsel of record, stating as follows: "Counsel, I have spoken with each of you about the material terms of settlement that came out of the mediation and the follow-up communications with me and amongst counsel. Despite prior communications stating that the parties had reached an agreement, Mr. Al Babseh [sic] has now twice (April 20 and May 4) told me that he does not agree with the terms. Given Mr. Al Babseh's [sic] position, I think my role as a mediator has come to a close. I will recommend to Judge Cullen that he hold a status conference with the parties to determine the next step in this case." (Docket Item No. 57-11.)

On May 8, 2023, the court held a status conference with counsel, and on May 11, 2023, Kostopanagiotis filed a Motion For Leave To Withdraw As Counsel.

(Docket Item No. 44.)  By Order entered May 17, 2023, (Docket Item No. 45), the court granted this motion.  In that Order, it states: "Judge Hoppe … determined that the terms Plaintiffs objected to were the terms they had previously accepted."  On June 20, 2023, Daniel Robert Sullivan entered an Appearance Of Counsel for Plaintiffs.  (Docket Item No. 49.)

In addition to the stipulated facts, the parties have alleged other facts for the court's consideration in deciding the Motion.  Specifically, Al Ababseh states when he called Kostopanagiotis on March 24, 2023, he told Kostopanagiotis if Utz's counsel provided them with the same terms as discussed in mediation, with an additional escrow term, he would accept the offer.  However, he contends the agreement sent to Kostopanagiotis was very different than what was discussed at mediation, in that paragraphs 4, 5, 6, and 13 had not been discussed during the mediation. According to Al Ababseh, Kostopanagiotis agreed to contact Utz's counsel and Judge Hoppe to get this corrected.  However, Al Ababseh claims when he met with Kostopanagiotis at his office the following day, Kostopanagiotis and his "boss" told him they would withdraw from the case if he did not accept the offer.  Al Ababseh claims he did not consent to such a withdrawal.  Kostopanagiotis stated he would delay withdrawing from representation until after a scheduled meeting with Judge Hoppe on April 12, 2023.  In the subsequently filed motion to withdraw, Kostopanagiotis states that, on March 27, 2023, Al Ababseh informed him he did not feel paragraph 13 of the Revised Material Terms of Settlement correctly reflected the terms of Utz's offer, as conveyed on March 23, 2023.  Kostopanagiotis stated he informed Al Ababseh the offer had been orally accepted and such representation had been conveyed to both Utz's counsel and Judge Hoppe following Al Ababseh's authorization.

## II.     Standard of Review

The district court possesses "the inherent authority to enforce a settlement agreement and to enter judgment based on an agreement…." *Petty v. The Timken Corp.*, 849 F.2d 130, 132 (4th Cir. 1988).  When faced with a motion to enforce a settlement agreement, two questions are before the court: (1) whether the parties reached a complete agreement and (2) whether the court can determine the terms and conditions of the agreement.  *See Campbell v. Adkisson, Sherbert & Assocs.*, 546 F. App'x 146, 152 (4th Cir. 2013) (citing *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 540-41 (4th Cir. 2002)); *Patel v. Barot*, 15 F. Supp. 3d 648, 653 (E.D. Va. 2014).  "If the court finds those pre-conditions satisfied, it may reach the merits and draw[] upon standard contract principles' in enforcing the agreement."  *Scott v. Clarke*, 355 F. Supp. 3d 472, 478 (W.D. Va. 2019) (quoting *Hensley*, 277 F.3d at 540-41); *see Bradley v. Am. Household, Inc.*, 378 F.3d 373, 380 (4th Cir. 2004).  Enforcing a settlement agreement turns upon "standard contract principles"[5] and can be accomplished "within the context of the underlying litigation without the need for a new complaint."  *Scott*, 355 F. Supp. 3d at 493 (quoting *Hensley*, 277 F.3d at 540); *see Bradley*, 378 F.3d at 380.  Before "proceed[ing] on the merits" of enforcement, however, a court must first ensure that there are no factual disputes (or if there are, resolve them) about the existence of an agreement and what terms are part of it.  *Scott*, 355 F. Supp. 3d at 493 (quoting *Hensley*, 277 F.3d at 540-41, 542).  Where there is a substantial factual dispute over the existence or terms of a settlement agreement, the court cannot summarily enforce the agreement, but must, instead,

---

[5] "Under governing Virginia law, settlement agreements are treated as contracts subject to the general principles of contract interpretation." *Byrum v. Bear Inv. Co.*, 936 F.2d 173, 175 (4th Cir. 1991); *see also Innotec, LLC v. Visiontech Sales, LLC*, 2018 WL 2293969, at *5 n.4 (W.D. Va. May 18, 2018) (courts look to state contract law when the formation or construction of a purported settlement agreement is at issue).

conduct an evidentiary hearing. *See Innotec*, 2018 WL 2293969, at *4 n.1 (citing *Hensley*, 277 F.3d at 540-41); *see also Woodson v. Nationwide Mut. Fire Ins. Co.*, 2019 WL 7285573, at *2 (W.D. Va. Dec. 9, 2019) ("If there is a factual dispute over the existence of an agreement, over the authority of the attorneys to enter into the agreement, or over the agreement's terms, [then] the district court … must conduct a plenary evidentiary hearing in order to resolve th[e] dispute and make appropriate findings."); *Kelly v. Jormandy, Inc.*, 2005 WL 3177730, at *1 (W.D. Va. Nov. 29, 2005) (holding same). If the court concludes an agreement was reached and can determine the terms of the agreement, then it "may enforce the agreement summarily as long as the excuse for nonperformance of the agreement is 'comparatively insubstantial.'" *Hensley*, 277 F.3d at 540 (quoting *Millner v. Norfolk & W. Ry. Co.*, 643 F.2d 1005, 1009 (4th Cir. 1981)). The burden of proof is on the party moving the court to enforce the settlement agreement. *See Saza, Inc. v. Zota*, 2012 WL 527370, at *5 (E.D. Va. Feb. 16, 2012). The moving party must prove the existence of an agreement, as well as the material terms therein. *See Saza*, 2012 WL 527370, at *5; *Poly USA, Inc. v. Trex Co., Inc.*, 2006 WL 517647, at *2 (W.D. Va. Mar. 1, 2006). That burden falls on Utz in this case.

"The essential elements of a contract are an offer, acceptance, and consideration." *United States v. Hanover Ins. Co.*, 2015 WL 9665679, at *3 (E.D. Va. Dec. 8, 2015) (quoting *Howell v. Kelly Servs., Inc.*, 2015 WL 2070348, at *2 (E.D. Va. May 1, 2015)). To have a complete agreement, there must be a "clear and definite offer that is expressly accepted by the other party or where it is clear the other party accepts based on his objective manifestations." *Hanover Ins. Co.*, 2015 WL 9665679, at *2 (citing *Howell*, 2015 WL 2070348, at *3). Offers to settle a case generally can be accepted by the opposing party's attorney, as attorneys have inherent authority to settle litigation on behalf of their clients. *See Howell*, 2015 WL

2070348, at *3 (citing *Moore v. Beaufort Cnty., N.C.*, 936 F.2d 159, 163 (4th Cir. 1991)); *but see Hensley*, 277 F.3d at 541 n.* (citing *Auvil v. Grafton Homes, Inc.*, 92 F.3d 226, 229-30 (4th Cir. 1996) ("Absent express agreement between an attorney and client, the attorney's implied authority is limited to negotiating a settlement, not agreeing to it."). "[T]he Court has only the power to enforce an agreement if there is an agreement on all the material terms." *Saza*, 2012 WL 527370, at *7 (citing *Ozyagcilar v. Davis*, 701 F.2d 306, 308 (4th Cir. 1983)). "Under Virginia law, mutual assent and a meeting of the minds is required by all 'minds' involved." *Hanover Ins. Co.*, 2015 WL 9665679, at *6 (citing *Moorman v. Blackstock, Inc.*, 661 S.E.2d 404, 409 (Va. 2008) (quotations omitted) ("Mutuality of assent – the meeting of the minds of the parties – is an essential element of all contracts. Until the parties have a distinct intention common to both … there is a lack of mutual assent and, therefore, no contract.").

In determining whether a settlement agreement has been reached, the court must "look[] to the objectively manifested intentions of the parties." *Innotec*, 2018 WL 2293969, at *4 (quoting *Moore*, 936 F.2d at 162); *see also Montagna v. Holiday Inns, Inc.*, 269 S.E.2d 838, 844 (Va. 1980) (the issue of whether a settlement agreement is binding is "ultimately resolved by a determination of the intention of the parties, as objectively manifested"). Simply "[h]aving second thoughts about the results of a valid settlement agreement does not justify setting aside an otherwise valid agreement." *Hensley*, 277 F.3d at 540 (quoting *Young v. FDIC*, 103 F.3d 1180, 1195 (4th Cir. 1997)); *see also Petty*, 849 F.2d at 133 ("Defeated expectations do not … entitle the litigant to repudiate commitments made to opposing parties or to the court."). Moreover, "[u]nless the resulting settlement is substantially unfair, judicial economy commands that a party be held to the terms of a voluntary agreement." *Petty*, 849 F.2d at 133.

### III.   *Analysis*

The first issue the court must address is whether the parties, here, reached a complete agreement. *See Hensley*, 277 F.3d at 540. Utz, as the party moving the court to enforce the settlement, bears the burden of proving the existence of an agreement and its terms. *See Saza*, 2012 WL 527370, at *5; *Poly USA*, 2006 WL 517647, at *2. Here, I find that, at the end of the mediation on March 23, 2023, there was a clear and definite offer by Utz. However, Plaintiffs did not accept that offer at that time. Instead, Al Ababseh requested 24 hours to consider whether to accept Utz's offer, which was granted. On March 24, 2023, when Kostopanagiotis contacted Al Ababseh, he advised Kostopanagiotis he would accept the offer *if* an escrow provision was added. After Kostopanagiotis spoke with opposing counsel, instead of adding an escrow provision, it was proposed that language be added which allowed Judge Hoppe to resolve any payment disputes. In his Statement, Al Ababseh says he informed Kostopanagiotis he agreed to this. This was the only change made to Utz's March 23, 2023, offer. Thereafter, Kostopanagiotis emailed counsel for Utz, advising that Al Ababseh agreed to the additional language and would be signing the Revised Material Terms of Settlement on March 27, 2023. I find that a complete agreement was reached at this time. Specifically, there was a clear and definite offer by Utz, which was expressly accepted by Al Ababseh. Moreover, the terms and conditions of the agreement are readily ascertainable, as they are set out in the Revised Material Terms of Settlement.

Despite Plaintiffs' contentions that there was no meeting of the minds because Al Ababseh had not seen the Material Terms of Settlement or Revised Material Terms of Settlement when he expressed his agreement to Kostopanagiotis, and these

documents contained material terms not discussed at the mediation,[6] I am not persuaded. Specifically, Judge Hoppe, the mediation judge, in an effort to sort out whether a settlement had been reached, held multiple, supplemental, ex parte mediation meetings with the parties. At the conclusion of these meetings, Judge Hoppe found, contrary to Al Ababseh's contentions, that Al Ababseh had, in fact, agreed to the terms, which had been discussed at the mediation, to which he then was objecting and continues to object. Aside from the parties themselves, Judge Hoppe, as the mediation judge, is in the best position to know what terms were discussed and negotiated at the March 23, 2023, mediation. In fact, as Utz points out in its reply brief, in his Statement, Al Ababseh specifically asked the court to rely on Judge Hoppe's recollection of the terms that were discussed during mediation when he stated as follows: "You can verify this with the mediation judge. …" Thereafter, by Order dated May 17, 2023, allowing Kostopanagiotis to withdraw from representing Plaintiffs, Judge Cullen, the district judge, memorialized Judge Hoppe's findings, stating as follows: "Judge Hoppe held a follow-up mediation session but determined that the terms Plaintiffs objected to were the terms they had previously accepted. …" (Docket Item No. 45.) I find that an evidentiary hearing would not result in any additional information than already has been provided either to the undersigned or to Judge Hoppe, as the presiding mediation judge and in follow-up meetings with the parties.

Given the facts before the court, I find that an evidentiary hearing is unnecessary and would constitute a waste of judicial resources. In his Statement, Al Ababseh said he told Kostopanagiotis, "I agree to the term that waw presented to me

---

[6] In particular, Al Ababseh claims paragraph 14, regarding the disposition of unsold inventory, as well as paragraph 4, regarding the "smooth transition" period, were not discussed during the mediation.

in mediation." Despite Plaintiffs' claims otherwise, the mediation judge has concluded that Al Ababseh agreed to terms to which he later objected and continues to object, and which were, in fact, discussed at mediation. Because the court is able to determine that an agreement was reached and what the terms of that agreement are, it may enforce the agreement summarily without the need for a plenary hearing. *See Hensley*, 277 F.3d at 540. For these reasons, I find it unnecessary to discuss the parties' additional arguments regarding apparent authority of counsel to accept settlement on Plaintiffs' behalf and whether the inventory and "smooth transition" terms are material to the agreement.

Based on the above, the undersigned finds that the parties reached a complete agreement, the terms of which are embodied in the Revised Material Terms of Settlement.

## RECOMMENDED DISPOSITION

For the foregoing reasons, I recommend that the court enforce the parties' settlement agreement as outlined in the Revised Material Terms of Settlement.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable Thomas T. Cullen, United States District Judge.

DATED:   October 24, 2023.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE